UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CURTIS OZMENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-CV-0649-CVE-TLW |
| | ) |
| AMERICAN CASUALTY PROPERTY | ) |
| & CASUALTY COMPANY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment of Defendant American National Property and Casualty Company (Dkt. # 26). Defendant argues that there is no genuine dispute as to any material fact as to plaintiff's breach of contract and bad faith claims, because the evidence establishes that plaintiff's insurance claim fell within an exclusion to insurance policy and defendant properly denied his claim. Plaintiff responds that defendant conducted an inadequate investigation of his claim and there is a genuine dispute of matrial fact as to cause of the sinking of his boat, and defendant's motion for summary judgment should be denied.

### I.

In 2008, Curtis Ozment purchased a 1968 Trojan 42 Sea Voyager. Dkt. # 26-3, at 18; Dkt. # 29-6, at 42. This is a 42 foot wooden boat that was manufactured in 1968 and Ozment was not the original purchaser of the boat. Before he purchased the boat, the previous owner advised Ozment that he had spent approximately $20,000 for maintenance of the boat and he had replaced beams in the substructure of the boat. Dkt. # 29-6, at 33. In March 2010, Ozment had the boat removed from the water for an inspection by Willow Creek Marina, and he paid over $4,200 to have rotten planks

replaced and painted. Dkt. # 29-4 (invoice from Willow Creek Marina); Dkt. # 29-6, at 36. Ozment also spent approximately two years remodeling the interior of the boat. Id. at 37-39. The boat was docked at the Grand Lake of the Cherokees in Oklahoma.

Ozment submitted an application to American National Property and Casualty Company (ANPAC) to insure the boat, and his application was approved. The watercraft policy provided a limit of $25,000 for property damage claims and liability coverage of $300,000 per occurrence. Dkt. # 26-3, at 18. The policy states that ANPAC "will pay for direct and accidental loss of or damage to . . . **Your insured watercraft** . . . ." Id. at 6. The policy includes numerous exclusions to coverage for property damage claims, including a "wear and tear" exclusion:

> We will not pay for loss or damage to **your insured watercraft**, or a **non-owned watercraft**:
>
> 1.   Confined to wear and tear (including marring, scratching, and denting), deterioration, inherent vice, latent defect, electrical or mechanical breakdown, or faulty manufacture, corrosion, rust, wet or dry rot, mold, moths, termites, vermin, marine life that attaches itself to **your insured watercraft**, dampness or atmosphere, ice, freezing, or extremes of temperature.

Id. at 7.

On June 14, 2012, the Grand River Dam Authority (GRDA) received a report that a boat tied to a dock was sinking and possibly leaking fuel, and Shawn Allred responded to the call. Dkt. # 29-2 (GRDA incident report). Allred arrived at the scene and confirmed that a large wooden boat bearing Oklahoma registration number OK7896DA was leaking fuel. Allred placed a containment boom around the boat to prevent the fuel leakage from spreading, and a towing service was contacted to remove the boat from the water. Grand Lake Towing, LLC raised the sunken boat and

towed the boat to Port Carlos Travel Lift for removal of the boat from the water. Dkt. # 29-5, at 20. Ozment was charged $8,990 for this service. Id.

On June 15, 2012, Ozment called ANPAC to make a claim for loss of the boat. Dkt. # 26-1, at 1. Plaintiff claims that ANPAC's representative advised him that his claim could be subject to exclusions under the policy, such as a "deteriorating hull," but this is not reflected in ANPAC's claims file. Dkt. # 26-1, at 1-2; Dkt. # 29, at 13 (quoting plaintiff's deposition testimony). While reviewing the claim, ANPAC discovered that plaintiff's insurance policy had lapsed due to non-payment, but plaintiff paid the premium and the policy was reinstated. Dkt. # 29-6, at 15. ANPAC does not dispute that the policy was in force at the time of the loss. ANPAC retained a marine surveyor, SHIPS, Inc. (SHIPS), and SHIPS received a "limited assignment"[1] to determine why the boat sank and the extent of the damage to the boat. SHIPS assigned William Hall to inspect the boat. Hall notified Ozment that he would be examining the boat and he had a "brief conversation" with Ozment. Dkt. # 26-2, at 1. Ozment told Hall that he found two breakers "tripped and/or turned off at the shore power unit," and that there had been a previous incident when the boat had taken on water. Id. Ozment also stated that he had remodeled the interior of the boat. Id. Hall inspected the boat and observed that the entire cabin and living areas had been underwater before the boat was raised. Id. at 2. The interior of the boat had been significantly damaged due to the intake of water and contamination from leaking fuel, and Hall estimated that it would cost at least $53,740 to repair

---

[1] Plaintiff argues that the "limited assignment" is evidence that ANPAC conducted an inadequate investigation. Dkt. # 29, at 11. However, the evidence submitted by plaintiff shows that any limitation did not concern the scope of Hall's investigation but, instead, Hall was not given authority to negotiate a settlement of plaintiff's insurance claim. Dkt. # 29-6, at 6. There is no evidence that ANPAC limited Hall's ability to fully investigate what caused the boat to sink.

the interior. The boat was valued at approximately $10,000 in the ABOS Blue Book Valuation Guide, but Hall conducted an Internet search and found 3 similar boats for sale ranging from $26,500 to $65,000. Id. Hall acknowledged that the interior of the boat had been remodeled, but he found that the oakum sealant between the wood planks had deteriorated. Id. Hall stated that "[w]ithout proper sealant between the wood hull planks, water can easily ingress in the vessel; and without shore power to supply power to the bilge, the vessel [sic] can result in sinking." Id. In his conclusion, Hall wrote that "this vessel's sinking was attributed to the ingress of water thru the hull planks from to [sic] the gradual deterioration of the plank sealant." Id. at 3. Hall did not make a recommendation as to whether the loss was covered under the insurance policy.

The adjustor assigned to plaintiff's claim, Zeb Oberlander, referred plaintiff's claim and Hall's report to a claims committee for review. The claims committee phrased the coverage questions as "[w]ill loss be covered due to cause of loss being a maintenance issue." Dkt. # 26-4. The claims committee found that the loss was "due to wear/tear and not covered." Id. Oberlander contacted Ozment to notify him of the claims committee's decision, and Ozment became "very upset" and stated that he would contact his attorney to file a bad faith claim against ANPAC. Dkt. # 26-5. On July 11, 2012, ANPAC sent a letter to Ozment formally denying the insurance claim for loss of the boat, and Ozment was advised that could submit additional "information which is inconsistent with this denial" to ANPAC for further review of his claim. Dkt. # 26-7. On November 2, 2012, Ozment filed this case in Rogers County District Court alleging claims of breach of contract and bad faith against ANPAC. Dkt. # 2-1. Ozment seeks the insurance policy limit of $25,000 for a property damage claim and he requests punitive damages in excess of $75,000. ANPAC removed the case to this Court on the basis of diversity jurisdiction. Dkt. # 2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Defendant argues that there is no dispute as to why plaintiff's boat sank and that plaintiff's insurance claim fell within the "wear and tear" exclusion to the policy, and summary judgment should be entered in favor of defendant on plaintiff's breach of contract claim. Defendant also argues that it conducted an adequate investigation into plaintiff's insurance claim and it properly denied his claim, and plaintiff has not shown that defendant acted in bad faith by denying his insurance claim. Plaintiff responds that defendant failed to consider his assertion that an electrical interruption played a significant role in the sinking of the boat and defendant conducted a biased and incomplete investigation of his claim, and defendant's motion for summary judgment should be denied as to his breach of contract and bad faith claims.

**A.**

The parties dispute whether plaintiff's insurance claim for loss of the boat is covered under the subject insurance policy. "The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." Houston Gen. Ins. Co. v. Am. Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997). In Oklahoma, interpretation of an insurance contract is a matter of law. Max True Plastering Co. v. U.S. Fid. and Guar. Co., 912 P.2d 861, 869 (Okla.1996). The insured has the burden of showing that his claim is covered under the policy. U.S. Fid. & Guar. Co. v. Briscoe, 239 P.2d 754, 756 (Okla. 1952) (noting that "the contractor must bring himself within the terms of the policy, before he can establish insurer's liability thereon"); see also Pitman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291, 1298 (10th Cir. 2000) ("the insured has the burden of showing that a covered loss has occurred"). Once the insured establishes

6

coverage, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." Id. at 1298.

Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering, 912 P.2d at 869. If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy. Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)). When construing an ambiguous term in an insurance contract, a court must consider "not what the drafter intended . . . but what a reasonable person in the position of the insured would have understood [the ambiguous provision] to mean." American Economy Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla. 2004).

The Court has reviewed the summary judgment record and finds that a genuine dispute as to a material fact precludes summary judgment on plaintiff's breach of contract claim. Plaintiff

argues that defendant failed to consider his assertion that the boat sank due to an interruption of the electrical power to the bilge pump. Although plaintiff's comment about the bilge pump is not in the adjustor's notes, plaintiff told Hall that he believed the breakers had been "tripped and/or turned off" and this information was provided to defendant in Hall's report. The report plainly states that the deterioration of the sealant between the hull planks <u>and</u> the lack of "shore power to supply power to the bilge [pump]" could cause a wooden vessel to sink. Dkt. # 26-2. There is no evidence that defendant even considered the loss of electrical power to the bilge pump as a contributing factor in the sinking of the boat. The claims committee notes show that defendant treated the "ingest of water thru the hull planks due to the deterioration of the plank sealant" as the sole cause of the loss. Dkt. # 26-4. Viewing the evidence in the light most favorable to plaintiff, plaintiff could establish that the loss of the boat was accidental and covered by the policy if the loss of power to the bilge pump was a cause in the sinking of his boat. Based on the evidence presented by the parties, there is genuine dispute as to what caused the boat to sink and this issue is material to the resolution of plaintiff's breach of contract claim. Thus, defendant is not entitled to summary judgment on plaintiff's breach of contract claim.[2]

---

[2]  Plaintiff has not challenged defendant's interpretation of the policy that the sinking of a boat caused by alleged deterioration of the hull or improper maintenance would be excluded from coverage. However, the plain language of the policy suggests that the "wear and tear" exclusion applies only to claims "confined to wear and tear . . . [and] deterioration." Dkt. # 26-3, at 7. Plaintiff made a claim for the sinking and potential total loss of his boat, not a claim for repairs for a deteriorating hull. In <u>St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.</u>, 561 F.3d 1181 (11th Cir. 2009), the marine insurance policy at issue excluded property damage coverage for "loss or damage <u>caused by or resulting from</u> wear and tear, electrolysis, lack of maintenance, corrosion, [and] deterioration . . . ." <u>Id.</u> at 1183 (emphasis added). The policy at issue in this case does not expressly exclude coverage for losses "caused by," "due to," or "resulting from" wear and tear or deterioration, and it is not clear that the exclusion would apply if plaintiff meets his burden to establish the accidental loss of the boat.

8

**B.**

Plaintiff alleges that defendant acted in bad faith by denying his insurance claim, because the denial of his claim was not based on a legitimate coverage dispute. He argues that defendant failed to conduct an adequate investigation into his claim and defendant failed to consider language in Hall's report suggesting that deterioration of the plank sealant was not the sole cause of the loss. Defendant responds that the investigation was adequate under the circumstances and it "promptly and efficiently" reviewed plaintiff's claim, and the evidence available to defendant showed that plaintiff's insurance claim was subject to an exclusion from coverage.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured." Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977). Violation of this duty gives rise to an action in tort. Id. "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions." Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989). The Oklahoma Supreme Court and the Tenth Circuit have made clear that an insurer does not subject itself to a claim of bad faith merely by disputing coverage. "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) (citing Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla. 1984)). "The decisive question is whether the insurer has a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'" Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991) (quoting Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987)). In order to succeed on a claim for bad faith, the

9

claimant must be able to prove that the insurer's actions went beyond an act of simple negligence; however, it is not necessary to prove that the insurer acted recklessly to prove liability, even though recklessness is a requirement for punitive damages in a bad faith claim. Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1094 (Okla. 2005). The Court can consider only the "facts known or knowable about the claim at the time the insured requested the insurer to perform its contractual obligation." Sims v. Travelers Ins. Co., 16 P.3d 468, 471 (Okla. Civ. App. 2000); see also Timberlake Construction Co. v. United States Fidelity & Guaranty Co., 71 F.3d 335, 340-41 (10th Cir. 1995).

Based on the facts known by defendant or that should have been known by defendant at the time it denied plaintiff's insurance claim, the Court finds that there is a genuine dispute as to whether defendant had a legitimate basis for disputing coverage. Hall's report plainly states that deterioration of the sealant between the hull planks and the loss of electrical power to the bilge pump could have caused the boat to sink. Dkt. # 26-2. Defendant did not investigate plaintiff's assertion that there was a loss of electrical power to the bilge pump that could have contributed to the sinking, and defendant made no finding that the bilge pump was improperly maintained. Instead, defendant relied solely on Hall's finding that the sealant had deteriorated as the basis for denying plaintiff's claim, and it is not clear that improper maintenance of the sealant could have independently caused the boat to sink. It is also unclear why defendant failed to at least take a statement from the insured before issuing a decision on the insurance claim. Defendant takes the position that it could rely solely on Hall's report as a basis for denying plaintiff's claim. However, defendant's denial must be "assessed in light of all the facts known and knowable concerning the claim at the time [the insured] requested [the insurer] to perform its contractual obligations." Buzzard, 736 P.2d at 159. Defendant claimed that the sinking of the boat was due to improper maintenance, but it made no

attempt to obtain maintenance records from plaintiff. Plaintiff has presented evidence that the hull of the boat was repaired in 2010, and this information would have likely have been provided to defendant if it had requested additional information about the loss from plaintiff. While an insurer is not required to investigate every possible source that would lead to relevant information, the insurer must conduct an investigation that is reasonable under the circumstances, and the minimal amount of investigation undertaken by defendant calls into question whether defendant had a good faith or justifiable reason to deny plaintiff's insurance claim. See Andres v. Oklahoma Farm Bureau Mut. Ins. Co., 290 P.3d 15, 17 (Okla. Civ. App. 2012) (the insurer's investigation must be "reasonably appropriate under the circumstances"). Plaintiff has met his burden to show that a genuine dispute as to a material fact exists concerning the existence of a legitimate coverage dispute, and defendant's motion for summary judgment should be denied in its entirety.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of Defendant American National Property and Casualty Company (Dkt. # 26) is **denied**.

**DATED** this 21st day of June, 2013.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE